**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---------------------------------------------------------------X

In re:                                                                                  Bankruptcy Case No. 13-10024

Elaine Maitland                                                              Chapter 7

        Debtor.
---------------------------------------------------------------X
Elaine Maitland

        Plaintiff,

vs.                                                                                        Adversary No. 14-1704

State of New Jersey Division of Taxation

        Defendant.

---------------------------------------------------------------X

**APPEARANCES**

Timothy P. Neumann, Esquire
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, New Jersey 08723
*Attorneys for Debtor/Plaintiff*

Heather Lynn Anderson, Esquire
Attorney General's Office
State of New Jersey, Division of Law
25 Market Street – PO Box 106
Trenton, New Jersey 08608
*Attorney for Defendant*

**KATHRYN C. FERGUSON, CHIEF U.S.B.J.**

Procedural History

Elaine Maitland filed a Chapter 7 petition on January 2, 2013. In her schedules, she listed debts owed to the IRS and the State of New Jersey Division of Taxation ("Division of Tax") for unpaid income taxes for the 2008 tax year. The court issued a notice of discharge on April 13, 2013, and closed the case. Ms. Maitland filed a motion to reopen her bankruptcy case for the purpose of filing this adversary proceeding.

Ms. Maitland filed a one-count complaint seeking a declaration that her income tax liability to the State of New Jersey for the 2008 tax year has been discharged, and that any effort by the Division of Tax to collect that debt would constitute a violation of the discharge injunction of 11 U.S.C. § 524(a).  Ms. Maitland filed a motion for summary judgment, and the Division of Tax filed a cross-motion for summary judgment. The parties submitted a Joint Stipulation of Material Facts, and agree that there are no disputed material facts that would require a trial.

The court took oral argument on the summary judgment motions on January 13, 2015, and requested additional briefing from the parties.  Ms. Maitland filed a supplemental brief on January 28, and the Division of Tax filed its brief on February 3, 2015. The parties waived oral argument and on the return date of the motions the court denied Ms. Maitland's motion, and ruled in favor of the Division of Tax on its cross-motion for summary judgment. During its oral opinion, the court noted, incorrectly as it turns out, that Ms. Maitland had failed to file a supplemental brief. After the hearing, Ms. Maitland's counsel listened to a recording of the ruling, and brought the error to the court's attention. Because the time for filing a motion for reconsideration had passed, the court informed the parties that it would reconsider its ruling under Federal Rule of Civil Procedure 60(a), made applicable in bankruptcy by Federal Rule of

Bankruptcy Procedure 9024. Rule 60(a) provides that the court may correct "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."[1]

### Facts

The facts are not in dispute. Ms. Maitland filed her federal and New Jersey personal Gross Income Tax return for the 2008 tax year on September 16, 2010. Under federal and New Jersey law,[2] the returns were due on April 15, 2009. On January 31, 2012, she filed an amended federal and an amended New Jersey personal Gross Income Tax Return for the 2008 tax year. Ms. Maitland's amended New Jersey return reduced her state tax liability from $23,860 to $11,641.

The IRS notified Ms. Maitland that it acknowledged that the tax liability on her amended return was discharged in her bankruptcy, and issued a Certificate of Release of Federal Lien. The Division of Tax, however, takes the position that the tax debt reflected on the 2008 returns was not discharged. Ms. Maitland filed this adversary proceeding to resolve that issue.

### Discussion

**A. Summary judgment standard**

Federal Rule of Civil Procedure 56 was substantially revised in December 2010. The comments to Rule 56 provide that the changes were intended "to improve the procedures for presenting and deciding summary-judgment motions …." Among other changes, the familiar formulation of "genuine *issue* of material fact" that was previously set forth in 56(c) was moved to 56(a) and modified to read "genuine *dispute* as to any material fact." Rule 56(a) now provides that the "court shall grant summary judgment if the movant shows that there is no genuine

---
[1] *Fed. R. Civ. P.* 60(a)
[2] *N.J.S.A.* 54A:8-1(a)

dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."[3] The comment to Rule 56 indicates that the 2010 "amendments will not affect continuing developments of the decisional law construing and applying these phrases."[4]

Accordingly, it remains a correct statement of the law to say that when faced with a summary judgment motion, the court must view the facts "in the light most favorable to the nonmoving party."[5] After the movant shows that there is no genuine factual dispute for trial, the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding a material fact.[6] To be material, a fact must have the potential to alter the outcome of the case.[7] Disputes over non-essential facts will not preclude a grant of summary judgment.[8]

This matter is ripe for summary judgment because the parties have stipulated that there are no genuine disputes as to any material fact.

**B. Definition of "return" under BAPCPA**

Before addressing the issues presented by the parties, the court must start at square one with the definition of a "return." The Bankruptcy Code requires that a debtor file a tax return in order for the tax debt to be dischargeable.[9] The parties fail to address whether either the original or amended tax return Ms. Maitland filed even qualifies as a "return" after the passage of BAPCPA.[10] This is an unsettled issue. Certain courts have interpreted the new definition of

---

[3] *Fed. R. Civ. P.* 56(a)
[4] *See also*, *Various Plaintiffs v. Various Defendants*, 856 F. Supp. 2d 703 (E.D. Pa. 2012)
[5] *Scott v. Harris*, 550 U.S. 372, 380 (2007)
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)
[7] *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006)
[8] *NAACP v. North Hudson Regional Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011)
[9] 11 U.S.C. § 523(a)(1)(B)(i) ("[a] discharge under section 727 … does not discharge an individual debtor from any debt – (1) for a tax … with respect to which a return … was not filed or given ….")
[10] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")

4

"return" to mean that there is a *per se* ban on discharging taxes if the return is filed after the due date.[11] Other courts have found that the mere fact that a debtors' tax return was filed late does not disqualify it as a "return."[12]

Prior to 2005, the term "return" as used in §523(a)(1) was not defined in the Bankruptcy Code. The definition of "return" that developed in the case law involved a four-part test "under which the document must: (1) purport to be a return; (2) be executed by the debtor under penalty of perjury; (3) contain sufficient data to allow calculation of the tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law."[13] As part of BAPCPA, a "hanging paragraph" was inserted after § 523(a)(19) that defines a "return":

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

Most courts have adopted an asterisk to indicate the "hanging paragraph."[14] The Third Circuit Court of Appeals has not had occasion to rule on the definition of a "return" post-BAPCPA, but

---

[11] *See, e.g.*, *Perkins v. Mass. Dep't of Revenue*, 507 B.R. 45 (D. Mass. 2014); *In re Wendt*, 512 B.R. 716 (Bankr. S.D. Fla. 2013); *Cannon v. United States (In re Cannon)*, 451 B.R. 204 (Bankr. N.D. Ga. 2011); *Creekmore v. Internal Revenue Serv. (In re Creekmore)*, 401 B.R. 748 (Bankr. N.D. Miss. 2008)

[12] *See, e.g., Biggers v. Internal Revenue Service (In re Biggers)*, 528 B.R. 870 (Bankr. M.D. Tenn. 2015*); Briggs v. United States (In re Briggs)*, 511 B.R. 707 (Bankr. N.D. Ga. 2014); *In re Martin*, 508 B.R. 717 (Bankr. E.D. Cal. 2014)

[13] *Hamer v. United States (In re Hamer)*, 328 B.R. 825, 831 & n. 9 (Bankr. N.D. Ala. 2005). This four-part test, commonly referred to as the *Beard* test, is derived from *Beard v. Commissioner*, 82 Tax Ct. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986).

[14] 11 U.S.C. § 523(a)(*)

the First, Fifth, and Tenth Circuits have.[15] Those courts have all concluded that a late return does not satisfy § 523(a)(*)'s definition of a "return."

The Fifth Circuit in *McCoy* was the first Circuit Court of Appeals to address whether a late-filed return qualifies as a "return" under the BAPCPA definition and Mississippi law.[16] The Fifth Circuit noted that the first sentence of § 523(a)'s hanging paragraph provides "a clear definition of 'return' for both state and federal taxes.[17] The court concluded that the definition's requirement that a return must comply with "applicable nonbankruptcy law (including applicable filing requirements)" necessarily encompasses any timeliness requirement contained in non-bankruptcy law.[18] Accordingly, the *McCoy* court found that late-filed returns cannot be considered "returns" for bankruptcy discharge purposes under what it called the plain language of the statute.

Notably, even the IRS has expressed concern over the Fifth Circuit's interpretation of the hanging paragraph, which would render a one-day-late return not a "return" at all for purposes of § 523. The IRS advocated against the *McCoy* result in a brief filed in a bankruptcy case in California, stating "The United States does not adopt this position, which creates a harsh result that appears inconsistent with the statute's intent."[19] Despite the IRS's position, other Circuit courts have adopted *McCoy*'s draconian interpretation.

---

[15] This issue is currently on appeal to the Ninth Circuit Court of Appeals. *See, IRS v. Smith (In re Smith)*, 527 B.R. 14 (N.D. Cal. 2014) (holding that BAPCPA's definition of a return did not displace the *Beard* test)
[16] *In re McCoy*, 666 F.3d 924 (5th Cir. 2012)
[17] 666 F.3d at 930
[18] *Id.* at 929
[19] *Martin v. Internal Revenue Service (In re Martin)*, 508 B.R. 717, 727 n. 14 (Bankr. E.D. Cal. 2014)

The Tenth Circuit in *Mallo*,[20] reached the same conclusion as the Fifth Circuit but in the context of a late-filed federal tax return. The *Mallo* court found that the Internal Revenue Code's use of the phrase "shall be filed on or before" April 15 to be a classic example of an "applicable filing requirement" because it was something that must be done with respect to filing a tax return. Accordingly, the *Mallo* court found that a return that did not satisfy the timeliness filing requirement can never be discharged.

The First Circuit in *Fahey*,[21] which involved four consolidated bankruptcy appeals, undertook a thorough analysis of the issue and concluded that timely filing a tax return is a "filing requirement" under Massachusetts law. Curiously, despite what appear to be facial inconsistencies in the text of the statute, the *Fahey* court concluded that there was "little need – or justification – for turning to secondary principles of statutory construction."[22] *Fahey* was not a unanimous decision, and Judge Thompson presented a robust dissent. He criticized the majority for being "unfairly dismissive of the debtors' logical interpretation of the statutory provisions at issue."[23] This court agrees that the majority's result in *Fahey* "defies common sense."[24]

The Seventh and Eighth Circuits have also considered this issue, but did not have to decide it because the cases before those courts were filed prior to the effective date of BAPCPA. The Seventh Circuit decided *Payne*[25] based on pre-BAPCPA law, but it nonetheless informs this

---

[20] *Mallo v. Internal Revenue Service (In re Mallo)*, 774 F.3d 1313 (10th Cir. 2014)
[21] *Fahey v. Massachusetts Department of Revenue (In re Fahey)*, 779 F.3d 1 (2015)
[22] *Fahey* at 9
[23] *Fahey*, at 11 (Judge Thompson, dissenting)
[24] *Id.*
[25] *In re Payne*, 431 F.3d 1055 (7th Cir. 2005)

court's decision. Judge Easterbrook wrote a cogent and nuanced dissent in that case. Judge Easterbrook pointed out that before a taxpayer can propose a compromise of his tax liabilities he must file a tax return, even if the IRS has already assessed the tax on its own. Judge Easterbrook therefore concluded that the Treasury Department does not consider a late filed (even post-assessment) tax return to be useless.[26] This is a compelling point because one of the rationales employed by those courts excluding a late filed return from the definition of a "return" is that a late return does not assist the IRS. Judge Easterbrook noted that "timely filing and satisfaction of one's financial obligations are requirements distinct from the definition of a 'return' " and he argued that the relevant legal provisions were the ones that require that taxpayers yield all financial information necessary for calculation of their tax liabilities.[27] Judge Easterbrook believed that the majority improperly conflated the objectives of obtaining accurate financial data and maximizing tax revenues, and insinuated a motive requirement into the definition of "return" that the cases used to formulate that definition do not support. "Motive may affect the consequences of a return," Judge Easterbrook opined, "but not the definition."[28] A year later, the Eighth Circuit noted in *Colsen*[29] that if that court were deciding the issue under the BAPCPA definition of a "return", it would adopt Judge Easterbrook's rationale in *Payne*.

This court respectfully disagrees with the conclusion reached by the Courts of Appeal that have ruled on this issue post-BAPCPA. This court, consistent with the dicta in *Colsen* and the dissents in *Payne* and *Fahey*, finds that a late-filed tax return can meet the definition of a return under § 523(a)(*). The reasons are five-fold.

---

[26] *Id.* at 1060 (Easterbrook, J., dissenting)
[27] *Id.* at 1060–61 (Easterbrook, J., dissenting)
[28] *Id.* at 1061–62 (Easterbrook, J., dissenting)
[29] *In re Colsen*, 446 F.3d 836 (8th Cir. 2006). The *Colson* court did not apply the current definition of return because the case was filed was prior to the effective date of BAPCA; therefore, its statement agreeing with Judge Easterbrook's rationale in *Payne* is dicta.

First, those courts' reading of the definition of the term "return" would render other parts of 523 superfluous, a result the Supreme Court has advocated that lower courts avoid.[30] In *Fahey*, the First Circuit opined that its ruling would not render § 523(a)(1)(B)(ii) superfluous because in a minute number of cases the IRS will allow a taxpayer to submit a return using the provisions of section 6020(a) of the Internal Revenue Code.[31] The *Fahey* court acknowledged that such returns are rare, but pointed out that there had been one bankruptcy case in which the IRS had prepared a return on behalf of the taxpayer with information supplied by the taxpayer under section 6020(a). That debtor was able to take advantage of § 523(a)(1)(B)(ii).[32] This court finds that one example of an instance where § 523(a)(1)(B)(ii) was not superfluous - in the decade since the enactment of BAPCPA - is hardly compelling support. Also, the *Fahey* court's interpretation means that a statutory provision is not superfluous so long as it is not utterly impossible for it to be used. That reading is far too contrived. The Supreme Court teaches that a statute should not be construed in a way that allows a "clause, sentence, or word" to be "superfluous, void, or insignificant."[33] If § 523(a)(1)(B)(ii) is read so that it applies only to those few souls that the IRS deems worthy of helping to file their tax returns, then the provision has undeniably been rendered insignificant.

Another provision of § 523 that would be undermined under the *McCoy* line of cases is § 523(b), which provides that "a debt that was excepted from discharge under subsection (a)(1) … in a prior case concerning the debtor … is dischargeable in a case under this title." If a late-filed

---

[30] *See*, *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) ("[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.")
[31] *Fahey*, 779 F.3d at 6-7
[32] *In re Kemendo*, 516 B.R. 434 (Bankr. S.D. Tex. 2014)
[33] *TRW Inc. v. Andrews*, 534 U.S. 19 (2001)

return is not a "return" then there is little need[34] for that provision, because in a new bankruptcy case the prior taxes, if based on an untimely return, would remain nondischargeable.

Second, this court finds that a plain language approach (which admittedly the *McCoy* line of cases claimed to have engaged in as well) does not fully support those courts' reading of the term. In crafting a definition of "return", Congress could have easily excluded a late return, but it did not do so. In fact, there is no temporal element in the definition. Additionally, the definition itself makes an exception for "a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law." Although that statutory provision does not specify when such a return would be filed, logic dictates that a 6020(a) return will invariably be filed after April 15th. Given that the definition itself includes a late-filed return as a "return", this court concludes that the definition was focused on *what* was filed, *i.e.*, the information necessary for a taxing authority to collect the debt, rather than *when* it was filed. The inclusion of 26 U.S.C. § 6020(a) versus § 6020(b) hinges on the cooperation of the taxpayer, not on any time requirement. Therefore, it seems inconsistent to conclude that the satisfaction of filing requirements allows only timely filed returns.

Third, the draconian result occasioned by excluding a late-filed return from discharge is inconsistent with the oft-stated policy of the Bankruptcy Code that its principal purpose is to grant a fresh start to the "honest but unfortunate debtor."[35] The *Fahey* court asserts that "there is hardly anything 'unfathomable,' 'draconian," or 'absurd'" in its holding. The First Circuit may have underappreciated the number of bankruptcy cases in which clearing up old tax debt is the

---

[34] The court is aware that occasionally a debtor will file a new bankruptcy case because the 240 day period in §507(a)(8) had not passed as of the date of the filing of the previous case; however, in this court's experience even in those instances most of those tax returns were not timely filed.
[35] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007)

primary purpose of the filing. Those debtors would certainly find the conclusion that if their tax return was so much as one day late – no matter how justified the reason – that they are saddled with that debt in perpetuity to be an unfathomable, draconian and absurd result. This court believes that following the *McCoy* line of cases "will produce a result demonstrably at odds with the intention of [the Bankruptcy Code's] drafters." Moreover, this court finds it implausible that Congress would enact such a dramatic change from prior law without a meaningful discussion of it in the legislative history.

Fourth, when one considers § 523(a)(1) as part of the broader statutory scheme of § 523(a), the *McCoy* line of cases is anomalous. Other subsections of § 523 primarily address debts arising out of culpable conduct by the debtor: fraud (§ 523(a)(2)); defalcation, embezzlement or larceny (§ 523(a)(4)); death or personal injury caused by driving while intoxicated (§523(a)(9)); or violation of Federal securities laws (§ 523(a)(19)). The *McCoy* reading of the definition of "return" would impose the same penalty for blameless failure to file a timely return, such as a debtor who was prevented from mailing his return on April 15th because of illness, as would be imposed on a debtor who committed an intentional tort. This court is reticent to adopt such a reading without stronger textual support in the statute.

Finally, the Circuit courts in the *McCoy* camp failed to address the detrimental impact their rulings would have on unsecured creditors who now must share the limited assets of the debtor with tax claims that may be decades old. Many of these unsecured creditors extended credit to the debtor based on its then current financial condition, unaware of old tax claims. Other aspects of the Bankruptcy Code demonstrate a careful balancing of the rights of various constituencies, so it is difficult to believe that Congress chose to favor taxing authorities to the complete detriment of other unsecured creditors and the debtor's fresh start.

For all of these reasons, the court finds that a late-filed tax return can meet the definition of a "return" under § 523(a)(*).

**C. Dischargeability of Ms. Maitland's 2008 tax debt under § 523(a)(1)(B)(ii)**

Ms. Maitland posits that the time period for determining whether her tax debt is dischargeable under § 523(a)(1)(B)(ii) should be measured from the filing of her original return, not from the filing of her amended return. Ms. Maitland cites two bankruptcy court opinions that support her position.

The first is *Greenstein*,[36] which although decided against the debtor, discussed the policy behind the two year period in § 523(a)(1)(B)(ii). The *Greenstein* court reasoned:

> Chapter 7 discharge depends on the taxpayer/debtor's compliance with applicable law governing the filing of the appropriate tax return. The effect of the two year limitation period is to allow the taxing authorities a reasonable time to collect the tax or create a lien on assets of the debtor. That period should begin with the filing of the return that reports or should report the debts the taxing authority seeks to collect. Until that return is filed, the taxing authority cannot be expected to take action to assess or collect the tax.[37]

The *Greenstein* court logically concluded that if the rationale behind the two year period in § 523(a)(1)(B)(ii) is to allow the taxing authority time to collect from or create a lien on assets of the debtor, then the clock should start running from the first time the debtor reports its tax liability.

The second case Ms. Maitland relies on is *Lamborn*,[38] which adopted, in part, the reasoning in *Greenstein*. The *Lamborn* court undertook a thorough analysis of all cases, dating back into the 1920's, that addressed whether a limitations period should be measured from an original or an amended tax return. Ultimately, the court concluded that the question is best answered on a case-by-case basis that balances fairness to the taxpayer against fairness to the

---

[36] *Greenstein v. Illinois Dep't of Revenue (In re Greenstein)*, 95 B.R. 583 (Bankr. N.D. Ill. 1989)
[37] *Id.* at 585
[38] *Lamborn v. IRS (In re Lamborn)*, 204 B.R. 999 (Bankr. N.D. Okla. 1997)

taxing authority.[39] The *Lamborn* court reasoned that, absent special circumstances, the limitations period in cases involving taxpayer misreporting should be calculated as follows:

> the limitations period for an original tax return should commence on the filing of the original return; an amended return should not toll the period *as to the same taxes admitted to be owed in the original return*; but an amended return should toll the period *as to additional tax liability admitted for the first time in the amended return*.[40]

If this court were to adopt the *Lamborn* approach it would be dispositive, because Ms. Maitland over-reported her 2008 tax liability; thus, there was no "additional tax liability admitted for the first time in the amended return."[41]

The Division of Tax attempts to distinguish *Lamborn* based on the fact that the language of § 523(a)(1)(B)(ii) does not differentiate between an original and an amended return. That argument is a nonstarter. It is precisely because § 523(a)(1)(B)(ii) does not use the term "original" or "amended" that the *Lamborn* court had to undertake an exhaustive review of the relevant caselaw.

The Division of Tax also suggests that this court should disregard *Lamborn* because it is a non-binding decision from a bankruptcy court outside this jurisdiction.  While that is true, the parties have not cited the court to any binding authority on this issue, and the court's own research has not disclosed any. It is worth noting that the cases the Division of Tax relies on are also outside this jurisdiction and are both more than twenty-five years old.[42]

---

[39] *Id.* at 1005
[40] *Id.* (emphasis in original)
[41] *Id.*
[42] One of the cases the Division of Tax relies on is *In re Edwards*, 74 B.R. 661 (Bankr. N.D. Ohio 1987). That case was decided under § 523(a)(1)(A) and both its facts and reasoning have no bearing on this issue.

The Division of Tax relies on *Wood*[43] for the proposition that "11 U.S.C. § 523(a)(1)(B)(ii) is the product of Congress' balancing of competing interests between a fresh start for debtors and the importance of paying taxes to State and Federal government."[44] That statement is not wholly accurate. The court in *Wood* noted that the tax dischargeability provisions in the Bankruptcy Code represented a balance between the interests of the debtor, unsecured creditors, "and the interests of the United States in collecting income taxes due." That is a subtle but important distinction; public policy aimed at encouraging taxpayers to *pay* taxes is different than public policy aimed at providing a taxing authority a fair opportunity to *collect* taxes. It appears to this court that § 523(a)(1)(B)(ii) is aimed at the opportunity to collect.

That conclusion is supported by the legislative history to the Bankruptcy Reform Act of 1978. The House Committee on the Judiciary, explaining why certain taxes should not be dischargeable in bankruptcy, stated that "[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts *before a taxing authority has an opportunity to collect any taxes due.*"[45] The Committee also noted that the fixing of time periods in § 523(a)(1)(A) and (a)(1)(B)(ii) is intended to provide taxing authorities with a reasonable time in which "to pursue delinquent debtors and obtain secured status."[46]

The recent case of *Putnam v. IRS*[47] further supports the court's conclusion that § 523(a)(1)(B)(ii) is aimed at giving a taxing authority a fair opportunity to collect taxes. *Putnam*

---

[43] *Wood v. IRS (In re Wood)*, 78 B.R. 316 (Bankr. M.D. Fla. 1987)
[44] *Brief in Support of Cross-Motion for Summary Judgment in Favor of the State of New Jersey* at 4
[45] H. Rep. No. 95–595, 95th Cong., 2d Sess. 1, 190, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6150 (emphasis added)
[46] *House Report* at 190, reprinted in 1978 U.S. Code Cong. & Admin. News at 6150
[47] *Putnam v. IRS (In re Putnam)*, 503 B.R. 656 (Bankr. E.D.N.C. 2014)

involved the collateral issue of whether the two-year period in § 523(a)(1)(B)(ii) is tolled by a debtor's intervening bankruptcy cases. The IRS argued that the period should be tolled because the automatic stay in the debtor's subsequent bankruptcy filings deprived the IRS of a full two year period in which to collect the tax debt. The *Putnam* court reasoned:

> The two-year lookback period [in § 523(a)(1)(B)(ii)] provides the IRS with a specified time period within which it must pursue its claim and preserve its rights. Because liability for untimely tax returns will be discharged if the return was filed more than two years before the bankruptcy petition, it encourages the IRS to collect on the debt or perfect its lien before the two-year period expires. If the IRS neglects its claim, the tax debt becomes dischargeable. The noted policies of repose, elimination of stale claims and certainty are all present.[48]

The *Putnam* court's observation that the two-year period commences when an untimely tax return is filed because that is "when the IRS is put on notice that it has a complete and present cause of action"[49] is highly relevant to this court's analysis. Here, the Division of Tax was first put on notice that there was an unpaid tax liability when Ms. Maitland filed the original return, the filing of the amended return merely provided supplemental notice.

Finally, this court's interpretation is consistent with the Supreme Court's decision in *Young*.[50] That case addressed whether the three-year period in § 507(a)(8)(a)(I) is tolled during the pendency of a bankruptcy case. The Supreme Court noted that the lookback "period thus encourages the IRS to protect its rights – by, say, collecting the debt … or perfecting a tax lien … before three years have elapsed. If the IRS sleeps on its rights, its claim loses priority and the debt becomes dischargeable."[51] That logic is equally applicable to § 523(a)(1)(B)(ii).

Finally, the Division of Tax claims that it is irrelevant whether an amended tax return increases or decreases the tax liability. That statement is at odds with New Jersey tax law, which

---

[48] *Id.* at 664
[49] *Id.*
[50] *Young v. United States*, 535 U.S. 43 (2002)
[51] *Id.* at 47

clearly recognizes that there is a difference. The New Jersey Gross Income Tax Act provides that a tax "shall be deemed to be assessed on the date of filing of the return (including any amended return showing an increase of tax)."[52] That statutory provision makes clear that under New Jersey law whether an amended return increases or decreases tax liability matters. It would be surprising that an increase or decrease is relevant under state law but not under bankruptcy law.

This court finds that the filing of an amended tax return that does not increase the tax liability should not give the taxing authority a second chance to collect unpaid taxes. In the case before the court, the Division of Tax was given a fair opportunity to collect the 2008 taxes as reflected on the original tax return. It did not to do so. The filing of an amended return that reduces the tax liability should not reward the Division for sleeping on its rights to the detriment of a debtor's fresh start.[53] As noted in *Wood*, "the Bankruptcy Code prefers the interests of the United States as a tax creditor only if the United States acts diligently…."[54] The court concludes that the 2008 tax debt is dischargeable under § 523(a)(1)(B)(ii) because the Division of Tax had more than the required two years from the filing of the original return [September 16, 2010] until the filing of the bankruptcy petition [January 3, 2013] to take action to assess or collect the tax."[55] Such a ruling furthers the principles enunciated by Congress when it adopted the original Bankruptcy Code and when it adopted BAPCPA.[56]

---

[52] *N.J.S.A.* § 54a:9-3
[53] *Putnam*, 503 B.R. at 665 (the two-year rule … provide[s] the IRS with a window within which it can reasonably expect to collect on the debt or perfect a lien, yet [it] also preserve[s] a debtor's right to a "fresh start" when those same tax claims go unpursued ….")
[54] 78 B.R. at 322
[55] *Greenstein*, 95 B.R. at 585
[56] BAPCPA added new provisions to § 507(a)(8) that were intended to toll the relevant time periods whenever the taxing authority is prevented from collecting, such as when an offer in compromise is pending. *See*, 11 U.S.C. § 507(a)(8)((A)(ii)(I)

**D. Dischargeability of Ms. Maitland's 2008 tax debt under § 523(a)(1)(A)**

The Division of Tax alternatively argues that the 2008 tax debt is nondischargeable under § 523(a)(1)(A). That section provides that a discharge does not apply to a tax "of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title…." The Division of Tax asserts that Ms. Maitland's 2008 taxes are not dischargeable under § 507(a)(8)(A)(iii) because it encompasses taxes "not assessed before but assessable, under applicable law or by agreement, after the commencement of the case."[57] The "applicable law" relied on by the Division of Tax is *N.J.S.A.* 54:49-6(b), which provides that personal Gross Income Taxes may be assessed at any time within four years of the filing of a return.  Ms. Maitland filed her original 2008 return on September 16, 2010, so under that statute the Division of Tax could assess additional taxes for the 2008 tax year at any time until September 15, 2014. In other words, additional assessments could be made on Ms. Maitland's original and amended 2008 returns after the commencement of her case.

That argument has a certain initial appeal, but it fails to take into account the introductory language of § 507(a)(8)(A)(iii), which makes it applicable to taxes "other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title …."[58]  This court has already found that Ms. Maitland's 2008 tax debt is a "tax of a kind specified in section 523(a)(1)(B)"; therefore, § 507(a)(8)(A)(iii) is, by its own terms, inapplicable.  Accordingly, the court rejects § 523(a)(1)(A) as an alternative basis for finding the 2008 tax debt nondischargeable.

Conclusion

The court hereby vacates its orders of February 17, 2015. The court grants summary judgment in favor of Ms. Maitland, and finds that her 2008 tax debt was discharged as part of her

---

[57] 11 U.S.C. § 507(a)(8)(A)(iii)
[58] 11 U.S.C. § 507(a)(8)(A)(iii)

bankruptcy case. The court denies the cross-motion for summary judgment by the Division of Tax. Ms. Maitland's counsel should submit a proposed order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
Chief Judge, US Bankruptcy Court

Dated:  June 10, 2015